**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Kyoko Takeuchi Pierre,   )<br>                         )<br>          Plaintiff,          )<br>                         )<br>vs.                      )<br>                         )<br>Michael J. Astrue, Commissioner of Social )<br>Security,                   )<br>                         )<br>          Defendant.        )<br>                         )<br>_____ ) | No. CV 10-0130-PHX-EHC<br><br>**ORDER** |

   This is an action for judicial review of a denial of disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). The matter is fully briefed (Doc. 17, 18 & 22).

   Plaintiff applied for disability benefits in April 2007 at approximately 26 years of age (Administrative Record [Tr.] 25, 85-87). Plaintiff alleged an onset of disability beginning June 15, 2007 (Tr. 85-87). She amended her disability onset date to August 7, 2007 (Tr. 109). Plaintiff is insured for benefits through June 30, 2011 (Tr. 15). The Administrative Law Judge ("ALJ") listed Plaintiff's severe impairments as seizure disorder, migraine headaches, cognitive disorder not otherwise specified, and borderline intellectual functioning (Tr. 17). Plaintiff's past relevant work was listed as health care worker and office clerk (Tr. 24).

   Plaintiff's application was denied initially and upon reconsideration (Tr. 73-75, 79-82). After a hearing before an ALJ (Tr. 34-69), Plaintiff's application was denied (Tr. 12-26).

The Social Security Appeals Council denied Plaintiff's request for review (Tr. 4-6), which was a final decision.

## I.

### Standard of Review

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). Social Security disability cases are evaluated using a five-step sequential evaluation process to determine whether the claimant is disabled. The claimant has the burden of demonstrating the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

In the first step, the ALJ must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. At the third step, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in the regulations; if so, disability is conclusively presumed and benefits are awarded. If the impairment or impairments do not meet or equal a listed impairment, the ALJ will make a finding regarding the claimant's "residual functional capacity" based on all the relevant medical and other evidence in the record. A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing physical, mental, nonexertional and other limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work"; if so, the claimant is not disabled and the claim is

denied. The Commissioner bears the burden as to the fifth and final step of establishing that the claimant can perform other substantial gainful work. Tackett, 180 F.3d at 1099.

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). "Substantial evidence is more than a mere scintilla but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks and citation omitted). The Court must consider the record in its entirety and weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

## II.

### Background Facts

Plaintiff's condition includes a history of a benign brain tumor, seizure disorder and migraine headaches (Tr. 310). Between July 2006 and August 2007, Plaintiff was treated by George Wang, M.D., of Neurology and Sleep Medicine Associates, for several seizure episodes, including one clonic/tonic (epileptic) seizure (Tr. 212, 215, 220, 223, 226, 310). Plaintiff reported a decrease in the frequency of her migraine headaches in July and August 2007 (Tr. 212, 215). Plaintiff's seizures, migraines, and rebound headaches were treated with medication, for which she reported no side effects (Tr. 212, 215, 220, 223, 226, 310). In July 2006, an electroencephalography ("EEG") was "mildly abnormal" but showed no epileptic activity (Tr. 323). An ambulatory EEG in June 2007 was normal (Tr. 218). Dr. Wang's mental status examinations from September 2006 to August 2007 showed that Plaintiff had

1  intact recent and remote memory, and good attention span and concentration (Tr. 213, 216,
2  221, 227, 309).

3  In September 2007, Jamshid Mirzaei, M.D., conducted a consultative examination of
4  Plaintiff (Tr. 239-242). Plaintiff described her daily activities as caring for her 3-year old son,
5  and performing household chores such as cleaning, washing dishes, laundry, vacuuming,
6  cooking, mopping and sweeping (Tr. 239-240). Plaintiff's neurological examination was
7  normal but Dr. Mirzaei recommended an evaluation by a neurologist based on Plaintiff's
8  reports of uncontrolled headaches and seizures (Tr. 242). Dr. Mirzaei found that, if Plaintiff's
9  seizure activity is controlled, Plaintiff was not restricted from engaging in work-related
10 activities, except that she should avoid moving machinery, working at heights, and excessive
11 noise, temperatures, or sounds (Tr. 242).

12 In October 2007, Patricia A. Abbott, Psy.D., conducted a psychological evaluation of
13 Plaintiff (Tr. 261-268). Plaintiff reported that she began to experience seizures in 1999 as a
14 result of a work-related accident, that she had continued to work, her seizures occurred twice
15 a month on average, and that her medication affected her ability to concentrate and focus (Tr.
16 261-262). Plaintiff described her daily activities as full-time care of her 4-year-old son; caring
17 and attending to the personal needs of her autistic sister with the aid of her mother; and,
18 cleaning, mopping, sweeping, cooking, feeding pets, and taking care of her own personal
19 needs (Tr. 263). Plaintiff said she had managed her own money in the past, although she had
20 no income at the time (Tr. 263).

21 Dr. Abbott observed that Plaintiff seemed to have difficulty with focus and
22 concentration and possibly had a headache (Tr. 263). Dr. Abbott's test results suggested
23 borderline intellectual functioning but no organic brain disorder (Tr. 263, 267). Plaintiff's
24 non-verbal reasoning skills, spatial processing skills, attentiveness to details, and visual motor
25 integration skills were in the low-average range (Tr. 263-264). Plaintiff had stronger skills
26 in visual memory tasks than with auditory memory tasks (Tr. 265). Dr. Abbott diagnosed
27 Plaintiff with cognitive disorder, borderline intellectual functioning, a seizure disorder, and

history of migraine headaches (Tr. 268). Plaintiff had significant deficits in working memory skills that were likely to make Plaintiff less efficient than her peers in holding information to perform specific tasks, and in the ability to learn new information especially when presented orally (Tr. 267).

With respect to Plaintiff's ability to perform mental work-related activities, Dr. Abbott found that Plaintiff was not significantly limited in the ability to remember locations and work-like procedure; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity with others without being distracted by them; and make simple work-related decisions (Tr. 269-271). Plaintiff had moderate difficulties in understanding, remembering and carrying out detailed instructions; in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; in completing a normal workday and workweek without psychological interruptions; and in performing at a consistent pace without an unreasonable number and length of rest periods (Tr. 270-271). Dr. Abbott reported that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods, noting "poor skills in focused attention." Plaintiff was not significantly limited in all aspects of social interaction and was moderately limited in all aspects of adaptation (Tr. 270-272).

In October 2007, Brady Dalton, Psy.D., a State Agency psychologist, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique Form (Tr. 243-256). Dr. Dalton diagnosed cognitive disorder and possible borderline intellectual functioning but no organic mental disorders (Tr. 244). Dr. Dalton opined that Plaintiff had no restrictions in activities of daily living; mild difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 253). Based in part on Dr. Abbott's report, Dr. Dalton found that Plaintiff was capable of engaging in simple, unskilled, repetitive work and that if engaged in simple tasks, Plaintiff was capable of sustaining attention and working a normal work

schedule (Tr. 255). With respect to mental work-related activities, Dr. Dalton's assessment was identical to Dr. Abbott's assessment except that Dr. Dalton found that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 257-258 ). Dr. Dalton found that Plaintiff had the ability to sustain attention for up to 2 hours at a time and perform at a consistent pace, particularly if she was engaged in simple, repetitive tasks (Tr. 259).

In February 2008, Eugene Campbell, Ph.D., a State Agency psychologist, reviewed Plaintiff's medical records and affirmed Dr. Dalton's assessment of Plaintiff's ability to perform mental work-related activities (Tr. 194).

Between October 2007 and November 2008, Plaintiff continued to see Dr. Wang, reporting several seizures, including one "big" one in October 2007, migraines, and daily headaches (Tr. 197-211). A November 2007 EEG showed intermittent diffuse slowing activities and slightly slow posterior rhythm (nonspecific), but no epileptic activity (Tr. 207-208). Between December 2007 and April 2008, Plaintiff reported two seizures a month, and at times worsening migraines and headaches (Tr. 197, 199, 201, 203, 206, 355, 358). Plaintiff said Ibuprofen, drinking hot tea and a new medication helped her headaches and migraines (Tr. 209, 197, 201, 204, 353, 355, 356). In May 2008, Plaintiff reported an increased number of seizures, and memory problems (Tr. 347, 350). Her headaches were less severe and responsive to Tylenol and Ibuprofen (Tr. 352, 350). An EEG in May 2008 recorded seizure activity, consistent with complex partial seizure (Tr. 345-346). Between July and August 2008, Plaintiff reported seizures, headaches, memory problems and medication side effects such as being sleepy and tired, mood swings, and weight gain (Tr. 333, 335, 339). In October 2008, Plaintiff reported fewer seizures, noting some connection with whether she had timely taken her medication, and "strong" headaches but that prescription medication and Ibuprofen were helpful (Tr. 327-332). By November 2008, Plaintiff reported no seizure activity, two "strong" headaches per week, and increased memory loss (Tr. 324). Mental status

examinations showed intact recent and remote memory and "fair" attention span and concentration (Tr. 330, 325, 328).

In October 2008, Plaintiff was treated by a licensed counselor who diagnosed depressive disorder, anxiety disorder, and possible major depressive disorder (Tr. 374). The counselor assessed Plaintiff's global assessment of functioning score at 60, which indicates moderate symptoms or moderate difficulty in social, occupational or school functioning (Tr. 375; Doc. 18 at 9 n.5). Plaintiff reported that she could not work due to the seizures, that she spent 80% of her time taking care of her autistic sister, and that she cared for her son (Tr. 365, 378). Plaintiff was "completely independent" with activities of daily living (Tr. 378).

### III.

### The Hearing Before the ALJ: January 8, 2009

Plaintiff and Vocational Expert ("VE") Sandra Richter testified at the hearing. Plaintiff, who was 28 years of age at the time of the hearing, has a high school degree and her past work includes taking care of her sister, heath care worker and office clerk (Tr. 44-45). Plaintiff said that between the seizure disorder and migraine headaches, the seizures were the worst (Tr. 46). Plaintiff said she was still having seizures even with medication (Tr. 47). Her medication included Dilantin and Topamax (Tr. 47-48).

Plaintiff testified that the smaller seizures occur about 3 or 4 times a week, come out of the blue, feel like being hypnotized, and last 3 to 4 minutes to 15 minutes (Tr. 48-49). After the seizure, Plaintiff feels tired and confused for about 3 or 4 hours (Tr. 49-50). Plaintiff said she also has partial complex seizures, which involve staring off into space, about 4 times a week (Tr. 50). Afterwards, she feels confused (Tr. 51). Plaintiff described having the "falling down" kind of seizure about 4 or 5 times a year (Tr. 51-52). During these seizures, Plaintiff may bite herself, such as her tongue or at the side of her cheek, become incontinent, and has been told she once removed her clothes (Tr. 51-52). Plaintiff once went to the emergency room because of a seizure when she fell and hit her head (Tr. 53). Plaintiff

1  said that increased stress from physical activity and emotional stress can bring on a seizure
2  (Tr. 53-54).  Plaintiff testified that her seizure activity is unpredictable (Tr. 55).

3       Plaintiff said she was taking Tylenol with Codeine, Ibuprofen 600 milligrams and
4  Maxalt for her migraine headaches (Tr. 55). She said she had migraine headaches about 4
5  times a week, they cause pain and blurry vision, and are unpredictable (Tr. 56-57).  Plaintiff's
6  other medications included Topamax, Tegretol and Keppra (Tr. 56).

7       Plaintiff testified that she lives with her mother, her 26-year-old autistic sister, and her
8  5-year old son (Tr. 45, 58-59). Plaintiff said she cannot take her son out by herself because
9  she is scared she might have a seizure (Tr. 58).  Plaintiff said she takes a companion with her
10 (Tr. 58).  Plaintiff took care of her sister 80% of her time because her mother was mostly
11 away from home (Tr. 63). Plaintiff reported performing household chores but said she took
12 a break every 45 minutes to an hour to avoid becoming tired and prompting a seizure (Tr. 59-
13 60). Plaintiff said her medication made her tired (Tr. 60).  Plaintiff is not allowed to drive and
14 depends on her mother to do groceries, etc. (Tr. 60).   Plaintiff calls the [AHCCCS] taxi to
15 provide transportation for the doctors (Tr. 60).

16      The VE testified that Plaintiff's past relevant work as health care worker was semi-
17 skilled, medium; and as office clerk was semi-skilled, light (Tr. 64).  The VE testified that a
18 person of Plaintiff's age, education and work history who has the mental residual functional
19 capacity as indicated by Dr. Dalton to perform only simple, unskilled, repetitive work would
20 not be able to perform Plaintiff's past relevant work (Tr. 65).  However, such a person could
21 perform a variety of unskilled jobs in the national economy, including the light work of an
22 inspector; the light and medium work as an assembler; and the light unskilled work of an
23 office clerk (Tr. 65-66).  When asked by the ALJ to include a person with the marked
24 limitation defined as "poor or no ability for focused attention," the VE testified that if the
25 person could not attend to or complete tasks timely, she would be unable to sustain full-time
26 work activity (Tr. 66).  Plaintiff's counsel upon questioning the VE confirmed that "the
27 marked limitation on focus, attention" precludes all sustained work (Tr. 66).

28

- 8 -

**IV.**

The ALJ's Findings

In a written decision dated August 4, 2009 (Tr. 15-26), the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 7, 2007, her amended onset date, and that she had the following severe impairments: seizure disorder, migraine headaches, cognitive disorder not otherwise specified, and borderline intellectual functioning (Tr. 17). These impairments or combination of impairments did not meet the listing criteria in the regulations (Tr. 18). The ALJ found that Plaintiff's mental impairments did not cause any restrictions in Plaintiff's activities of daily living, caused only mild difficulties in social functioning, and caused marked difficulties in Plaintiff's concentration, persistence or pace (Tr. 18). This latter finding was supported by the results of the consultative psychological evaluation and a Full Scale IQ of 76 (Tr. 18-19). Plaintiff had no episodes of decompensation (Tr. 19).

The ALJ found that Plaintiff had the residual functional capacity to perform medium work except that she cannot climb ladders, ropes, scaffolds; she can occasionally climb ramps, stairs and frequently balance, stoop, kneel, crouch and crawl; she must avoid moderate exposure to hazards and concentrated exposure to noise; she should not drive; and Plaintiff is limited to simple, unskilled repetitive work (Tr. 19). The ALJ reported that this finding was supported by the objective medical evidence, the minimal abnormal clinical findings, the longitudinal treatment record, and observations of her treating and examining physicians (Tr. 19). The ALJ found that Plaintiff's allegations of disabling headache pain, incapacitating seizures and limitations were not fully supported in the medical records and were inconsistent with her activities of daily living (Tr.19). The ALJ found that although Plaintiff had some cognitive deficits, she should still be able to sustain simple repetitive work (Tr. 19, 22).

The ALJ discussed the medical records of Dr. Wang, the evidence as a whole, including Plaintiff's high level of activities, and whether Plaintiff was compliant with her medication. Plaintiff's activities included sole care-giver of her 5-year old son, 80% care for

her sister who is autistic and dependent on Plaintiff and her mother, and household activities (Tr. 22). The ALJ noted discrepancies in Plaintiff's credibility, citing inconsistent statements regarding the frequency and type of seizures she experienced, her travel to California and attendance at a party, and her occasional noncompliance with medications (Tr. 22-23).

The ALJ stated that the residual functional capacity conclusion was supported by the October 2007 opinion of Dr. Abbott, the psychological consultative evaluator (Tr. 24). The ALJ gave "some weight" to the September 2007 opinion of Dr. Mirzaei (Tr. 24). The ALJ gave substantial weight to the State Agency medical consultants who reviewed the medical evidence and determined Plaintiff's physical and mental residual functional capacities (Tr. 24). The ALJ found that Plaintiff could not perform her past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. These unskilled simple occupations included inspector (light), assembler (medium and light), and clerk (light and sedentary) (Tr. 25-26). The ALJ concluded that Plaintiff was not under a disability (Tr. 26).

## V.

### Discussion

Plaintiff argues that the ALJ erred in purporting to rely on Dr. Abbott's report when the VE testified that a person with the limitations assessed by Dr. Abbott would be unable to work; in rejecting Plaintiff's symptom testimony absent clear and convincing reasons; in finding other jobs in the economy that Plaintiff could perform based on the VE's testimony that was inconsistent with job data in the Dictionary of Occupational Titles; and, in determining Plaintiff's residual functional capacity without undertaking the function-by-function analysis required under the social security rules. Plaintiff seeks a remand for an award of benefits or, in the alternative, remand for further administrative proceedings. Defendant argues that the ALJ's findings are supported by substantial evidence but if not, the Court should remand for further proceedings.

With respect to the first issue, Plaintiff argues that the ALJ relied on Dr. Abbott's assessment without explicitly rejecting any portion of it, and then failed to provide adequate reasons for not considering that part of Dr. Abbott's assessment finding that Plaintiff is markedly limited in attention and concentration which, according to the VE, precludes all work.

Defendant argues that the ALJ's mental residual functional capacity finding that Plaintiff is limited to simple, unskilled, repetitive work is supported by the findings and opinions of both Dr. Dalton and Dr. Abbott (Doc. 18 at 15-16). Defendant further argues that Dr. Abbott did not assess or comment on whether Plaintiff could perform simple, repetitive types of unskilled work on a sustained basis (Doc. 18 at 17). Rather, Dr. Dalton rated Plaintiff's abilities in the general areas and then reached this specific assessment as arguably consistent with other record evidence (Doc. 18 at 17-18). According to Defendant, given the medical record, the ALJ reasonably relied on Dr. Dalton's ultimate conclusion that limited Plaintiff to simple, unskilled, repetitive tasks (Doc. 18 at 18).

In this case, Dr. Abbott conducted a psychological evaluation of Plaintiff on October 16, 2007. Dr. Abbott completed a "Psychological Evaluation," a narrative report that included background information, behavioral observations, test results and assessments (Tr. 261-268); and a "Medical Source Statement Of Ability To Do Work Related Activities (Mental)", a check-box style assessment (Tr. 269-273). In the Psychological Evaluation, Dr. Abbott included Plaintiff's reports that her seizure medication seemed to interfere with her ability to concentrate and focus (Tr. 261 & 262). Dr. Abbott wrote regarding behavioral observations that: "[Plaintiff] seemed to have difficulties with focus and concentration and this became more of a problem as the evaluation progressed. She seemed to have developed a headache during the evaluation which may have contributed to her impaired focus" (Tr. 263). With respect to Plaintiff's overall verbal abilities, Plaintiff scored in the 5th percentile (Tr. 264). Dr. Abbott noted that Plaintiff "scored significantly lower on Letter Number Sequencing which is a measure of working memory and requires focus and concentration skills" (Tr. 264).

1  Regarding Working Memory indices, Dr. Abbott noted that Plaintiff's scores were
2  significantly below expectation when compared to Plaintiff's Full Scale IQ (Tr. 264). Dr.
3  Abbott reported that "[t]his type of deficit could result from a long standing attentional deficit.
4  It may also be related to changes in focus and attention skills related to her medications or the
5  presence of migraine. In any event, difficulties in working memory can make many routine
6  cognitive tasks quite difficult" (Tr. 264). In the "Medical Source Statement Of Ability To Do
7  Work Related Activities (Mental)", Dr. Abbott reported that Plaintiff was "markedly limited
8  (poor or none)" in "[t]he ability to maintain attention and concentration for extended periods,"
9  including a handwritten note "has poor skills in focused attention" (Tr. 270).

10  Dr. Dalton, a consultative reviewing physician, completed a Psychiatric Review
11  Technique Form on October 22, 2007 (Tr. 243-256), which included a "Rating of Functional
12  Limitations" (Tr. 253-254) and "Consultant's Notes" (Tr. 255-256). In the "Rating of
13  Functional Limitations," Dr. Dalton noted Plaintiff's "marked" limitation regarding
14  "Difficulties in Maintaining Concentration, Persistence, or Pace" (Tr. 253). In the
15  "Consultant's Notes," Dr. Dalton discussed various aspects of Dr. Abbott's report and stated
16  in the analysis section that there was evidence of intellectual functioning in the borderline
17  range and memory impairments but that the severity of these limitations did not appear to
18  prevent Plaintiff from engaging in "simple, unskilled repetitive work" (Tr. 255). Dr. Dalton
19  also completed a "Mental Residual Functional Capacity Assessment" (Tr. 257-259) wherein
20  he reported that Plaintiff was "moderately limited" in "[t]he ability to maintain attention and
21  concentration for extended periods" (Tr. 257) and assessed that Plaintiff appeared capable of
22  simple, unskilled repetitive work (Tr. 259).

23  The ALJ concluded that Plaintiff had the residual functional capacity to perform the
24  demands of medium work with certain expressed limitations, and that Plaintiff was limited

to simple, unskilled, repetitive work, referencing the RFC reports of Dr. Griffith[1] and Dr. Dalton (Tr. 19), without mentioning these professionals by name. Following this finding, the ALJ discussed various medical reports of record, including those of treating physician Dr. Wang and examining professionals Drs. Mirzaei and Abbott, and evidence that purported to show that Plaintiff had a high level of functioning and that the severity of her seizures and headaches would not likely preclude all work activity (Tr. 19-24).  The ALJ found that the record did not support the severity of Plaintiff's allegations regarding her depression, her inability to focus and her poor ability to concentrate (Tr. 21). The ALJ also found that Plaintiff's statements to Dr. Abbott that her seizure medication caused her to have poor focus and concentration and Plaintiff's claim of medication side effects were not supported by the medical record (Tr. 23).

With respect to the RFC finding, the ALJ specifically stated in the decision: "As for the opinion evidence, the residual functional capacity reached herein is supported by the opinion of Dr. Abbott, the psychological consultative evaluator who examined the claimant in October of 2007" (Tr. 24).  In making this finding, the ALJ referred to Dr. Abbott's Psychological Evaluation report (Exhibit 1F, pages 81-87 [bottom page numbering]) but not to Dr. Abbott's  "Medical Source Statement Of Ability To Do Work Related Activities (Mental)." The ALJ further credited the opinions of the non-examining expert sources to the extent they were consistent with the substantive weight of the objective medical evidence (Tr. 24).  The ALJ gave substantial weight to the State Agency medical consultants who reviewed Plaintiff's file and determined Plaintiff's physical and mental residual functional capacities (Tr. 24), stating that these medical opinions were compelling as supported by the great weight of the record evidence (Tr. 24). Regarding this latter conclusion, the ALJ again referenced the RFC findings of non-examining professionals Dr. Griffith and Dr. Dalton. The ALJ did not

---

[1] Dr. Griffith's RFC report concerns Plaintiff's physical RFC assessment (Tr. 229-237) and is not at issue in this appeal (Doc. 18 at 3 n. 3).

mention these doctors by name, discuss their findings or opinions, or set forth more specific reasons for crediting their opinions.

During the hearing, in response to the ALJ's hypothetical question that included a person of Plaintiff's age, education and work history, who can perform medium work with some physical limitations in climbing, etc., and exposure to hazards, who is restricted to performing simple unskilled repetitive work, and who has marked limitation defined as poor or no ability for focused attention, the VE testified: "I believe if you cannot attend that - - to the job that you're doing and complete it in the time allowed, you cannot work" (Tr. 64-66). The ALJ's hypothetical question included the limitation expressed by examining professional Dr. Abbott regarding Plaintiff's marked limitation in attention and concentration (see Tr. 66 wherein the ALJ cited "Exhibit 1F, page 90" [bottom page numbering]).  However, as previously discussed, the ALJ ultimately found that Plaintiff has the residual functional capacity for simple, unskilled, repetitive work by crediting the report of non-examining professional Dr. Dalton.

Plaintiff's medical records as reported by Dr. Wang show Plaintiff's treatment for seizures, migraines and headaches of varying intensity and frequency between July 2006 and November 2008. In May 2008, Plaintiff reported memory problems that continued into November 2008 when Plaintiff reported memory loss and two "strong headaches" per week (Tr. 324). Regarding a July 2008 exam, Dr. Wang reported that Plaintiff presented "with more memory loss, she is unsure of the medications she is taking and what they do. The patient has had difficulty with her memory in the past" (Tr. 339). While Dr. Wang's mental status exams of Plaintiff showed intact recent and remote memory, they showed Plaintiff's attention span and concentration as "fair" between April 2008 and November 2008 (Tr. 330, 325, 328, 334, 338, 342, 348, 351, 354). Dr. Wang's reports appear consistent with Dr. Abbott's October 2007 report regarding Plaintiff's limitation in attention and concentration.

A treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a non-examining reviewing or consulting physician's opinion. See Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must set forth "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. If the opinion is contradicted, it can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent and supported by other independent evidence in the record. Lester, 81 F.3d at 830-831.

The ALJ erred in giving substantial weight to Dr. Dalton's opinion regarding the finding that Plaintiff was capable of simple, unskilled repetitive work in assessing Plaintiff's residual functional capacity. Dr. Dalton was not Plaintiff's treating physician and never personally evaluated her. "Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). Moreover, in assessing Plaintiff's RFC, the ALJ discussed and relied on Dr. Abbott's Psychological Evaluation report without rejecting any part of it and then ignored Dr. Abbott's finding in the "Medical Source Statement Of Ability To Do Work Related Activities (Mental)" that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods. "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. The VE testified that including

1  the marked limitation "poor or no ability for focused attention,"as reported by Dr. Abbott, all
2  work is precluded. No outstanding issue remains to be resolved and it is clear the ALJ would
3  be required to find Plaintiff disabled.  Varney v. Sec'y of HHS, 859 F.2d 1396, 1400-1401
4  (9th Cir. 1988). The decision of the Commissioner will be reversed and the matter will be
5  remanded for an award of benefits.

6      Accordingly,

7      **IT IS ORDERED** that the decision of the Commissioner denying Plaintiff's claim for
8  benefits is reversed.

9      **IT IS FURTHER ORDERED** that the case is remanded for an award of benefits to
10 Plaintiff.

11     **IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment
12 accordingly.

13     DATED this 12th day of May, 2011.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge